TPW: USAO 2019R00420

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| | * | |
| v. | * | CRIMINAL NO. TDC 19 cr 509 |
| | * | |
| ANITRA EDMOND, | * | (Wire Fraud, 18 U.S.C. § 1343; |
| | * | Forfeiture, 18 U.S.C. § 981(a)(1)(C), |
| Defendant | * | 21 U.S.C. § 853, 28 U.S.C. § 2461(c)) |
| | * | |

*******

## INFORMATION

### COUNT ONE
### (Wire Fraud)

The United States Attorney for the District of Maryland charges that:

**Introduction**

At all times relevant to this Information:

*Maryland State Government*

1. The General Assembly was the State of Maryland's legislative body. The bicameral legislature was composed of the Senate, with 47 Senators, and the House of Delegates, with 141 Delegates.

2. Maryland state law required certain State officials, employees, and candidates for office to file annual financial disclosure statements.

3. The Maryland State Ethics Commission, as directed in General Provisions Article § 5-205, administered the provisions of the Maryland Public Ethics Law.

*The Maryland State Board of Elections and Regulated Campaign Committees*

4.   The Maryland State Board of Elections regulated state and local elections in Maryland and was charged with ensuring compliance with both state and federal election laws as it related to elections that occurred within their respective jurisdictions.   The State Board of Elections maintained a database of campaign donations for state and local election campaigns and enforced Maryland's campaign finance laws.

5.   The "Friends of Tawanna P. Gaines" (hereinafter "FTPG") candidate committee was the name of the campaign finance entity for a candidate's campaign for Maryland State Delegate from the date of its establishment in June 2002 through the present.   FTPG was a regulated state election campaign committee.   The Defendant, **ANITRA EDMOND ("EDMOND")**, was the treasurer of FTPG from 2005 to the present.   FTPG held a bank account at Bank of America, a financial institution insured by the Federal Deposit Insurance Corporation.   **EDMOND** was the sole signatory on the FTPG BOA account and had possession of a debit/ATM card for the account.

6.   Under Maryland Code, Election Law, § 13-218, the campaign treasurer was responsible for maintaining the assets of a campaign finance entity.   Similarly, under § 13-218(b), the campaign finance entity's assets "may be disbursed only if they have passed through the hands of the treasurer" and only "in accordance with the purposes of the entity."

7.   In addition, under § 13-220, a campaign finance entity "shall deposit all funds received in a designated campaign account" and, subject to certain exceptions inapplicable to the conduct described herein, may only make disbursements from its bank account by check or electronic method—that is, specifically *not* by cash withdrawal.

8. Under § 13-221, the treasurer "shall keep a detailed and accurate account book of all assets received, expenditures made, and obligations incurred by or on behalf of the entity," and "[e]ach expenditure made from a campaign account shall be supported by a receipt." Campaign finance entities for state offices in Maryland were required to file certain campaign finance reports with the Maryland State Board of Elections. As FTPG treasurer, **EDMOND** annually attested to the accuracy of the FTPG campaign finance reports under penalty of perjury.

### The Wire Fraud Scheme

9. From at least in or about November 2012 through in or about June 2018, in the District of Maryland and elsewhere, **EDMOND** knowingly and willfully devised and intended to devise a scheme and artifice to defraud FTPG and the campaign contributors of FTPG, and obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, with the intent to defraud and knowledge of the scheme's fraudulent nature ("the wire fraud scheme").

### Manner and Means of the Wire Fraud Scheme

It was part of the wire fraud scheme that:

10. **EDMOND**, without authorization and in violation of Maryland campaign finance laws, would utilize campaign funds from the FTPG BOA account for her personal use.

11. **EDMOND** deposited certain checks from campaign contributors directly into her personal bank account at BOA, instead of into the FTPG BOA account.

12. **EDMOND** would receive and deposit campaign contributions into the FTPG BOA account and convert them to her own use without causing the contributions to be identified on campaign finance reports made to the Maryland State Board of Elections.

## The Charge

13. On or about June 25, 2018, in the District of Maryland and elsewhere, the defendant,

**ANITRA EDMOND,**

for the purpose of executing and attempting to execute the wire fraud scheme, knowingly transmitted and caused to be transmitted the following by means of wire communication in interstate commerce: a wire communication sent outside of Maryland regarding an $800 cash withdrawal from the FTPG BOA account.

18 U.S.C. § 1343

## FORFEITURE ALLEGATION

The United States Attorney for the District of Maryland further finds that:

1. Pursuant to Federal Rule of Criminal Procedure 32.2, notice is hereby given to the defendant that the United States will seek forfeiture as part of any sentence in accordance with 18 U.S.C. § 981(a)(1)(C), 21 U.S.C. § 853(p), and 28 U.S.C. § 2461(c), in the event of the defendant's conviction on Count One of this Information.

### Wire Fraud Forfeiture

2. Upon conviction of the offense set forth in Count One, pursuant to 18 U.S.C. § 981(a)(1)(C), the defendant,

**ANITRA EDMOND,**

shall forfeit to the United States any and all property, real or personal, which constitutes or is derived from proceeds traceable to such offense, including but not limited to a money judgment of at least $35,188.63 in United States currency.

### Substitute Assets

3. If, as a result of any act or omission of any defendant, any of the property described above as being subject to forfeiture:

    a. cannot be located upon the exercise of due diligence;

    b. has been transferred or sold to, or deposited with, a third person;

    c. has been placed beyond the jurisdiction of the Court;

    d. has been substantially diminished in value; or,

    e. has been commingled with other property which cannot be subdivided without difficulty,

the United States, pursuant to 21 U.S.C. § 853(p), as incorporated by 28 U.S.C. § 2461(c), shall be entitled to forfeiture of substitute property up to the value of the forfeitable property described above.

18 U.S.C. § 981(a)(1)(C)
21 U.S.C. § 853(p)
28 U.S.C. § 2461(c)


Date: October 28, 2019

Robert K. Hur /TW
Robert K. Hur
United States Attorney